IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON NATURAL RESOURCES )    Civil No. 05-3004-PA
COUNCIL FUND, et al., )
)
        Plaintiffs, )    **OPINION AND ORDER ON**
)    **ATTORNEY FEES AND EXPENSES**
        v. )
)
LINDA GOODMAN, et al., )
)
        Defendants, )
)
        and )
)
MT. ASHLAND ASSOCIATION, dba )
SKI ASHLAND, )
)
        Defendant-Intervenor.)
------------------------------)

**PANNER, Judge.**

    Three environmental groups brought this action against the
United States Forest Service and the Regional Forester.
Plaintiffs argued that the federal defendants violated various
environmental laws in approving the Mount Ashland Ski Area
Expansion Project.  The operator of the ski area was permitted to
intervene as a defendant.  I entered judgment for all Defendants.
Oregon Natural Resources Council Fund v. Goodman, 2007 WL 489272
(D. Or. 2007).  The Ninth Circuit reversed and directed that
judgment be entered for Plaintiffs.  505 F.3d 884 (9th Cir.

2007).  Two of the plaintiffs now apply for an award of attorney fees and expenses against the federal defendants,[1] pursuant to the Equal Access for Justice Act, 28 U.S.C. § 2412 ("EAJA").  The application covers fees in the district court and on appeal.

### Legal Standards

When a litigant meeting the statutory criteria prevails in a civil action against the United States, attorney fees and other expenses shall be awarded to that party unless the government establishes that its position was substantially justified or that special circumstances render a fee award unjust.  28 U.S.C. § 2412(d)(1)(A); Rueda-Menicucci v. INS, 132 F.3d 493, 495 (9th Cir. 1997); Oregon Natural Resources Council v. Madigan, 980 F.2d 1330, 1331 (9th Cir. 1992).  The "fundamental purpose [of EAJA is] to prevent private individuals from being deterred from challenging government action because of the threat of high litigation expenses."  United States v. 101.80 Acres of Land, 716 F.2d 714, 720 (9th Cir 1983).

### Discussion

The government concedes Plaintiffs are prevailing parties for purposes of EAJA.  The government also acknowledges the fee applicants meet the criteria under § 2412(d)(2)(B) to be "EAJA eligible."  The government argues that the fee application should be denied because the government's position was substantially justified.  Alternatively, the government requests a "significant reduction" in the fee award.

---

[1]  Plaintiffs do not seek attorney fees from the ski resort's private operator.

**A.    <u>Entitlement to Award of Attorney Fees</u>**

**1.    Whether the Government's Position was Substantially Justified**

The burden is on the government to demonstrate that its position was substantially justified.  <u>Oregon Natural Resources Council</u>, 980 F.2d at 1331.  The government must do more than simply show that its position was unworthy of sanctions for frivolousness; EAJA sets the bar higher than that.  <u>See</u> <u>Pierce v. Underwood</u>, 487 U.S. 552, 566 (1988).  It also is no defense that the government believed its position was justified, if in fact it was not.  <u>Andrew v. Bowen</u>, 837 F.2d 875, 878-79 (1988) ("EAJA requires courts to examine the government's conduct, not the Secretary's beliefs with respect to his policies").

In the present litigation, the Ninth Circuit determined that the government did not comply fully with the applicable Land and Resource Management Plan, or with the Northwest Forest Plan, the National Forest Management Act, 16 U.S.C. § 1600 et seq., the National Environmental Policy Act, 42 U.S.C. § 4321 et seq., and various implementing regulations.  The panel's unanimous opinion identifies multiple procedural and substantive errors by the agency involving several different issues.  <u>See</u> <u>ONRC v. Goodman</u>, 505 F.3d at 890-91 (inadequate analysis of pacific fisher); at 892-93 (failure to discuss cumulative impacts of other planned projects and importance of biological corridor); at 893-95 (violation of standards governing Riparian Reserves); and at 895-96 (failure to comply with watershed protections in LRMP).

The government relies mostly on my decision granting summary judgment for defendants.  That I initially ruled for the

government is a consideration, but not dispositive.  The Ninth
Circuit frequently allows attorney fees under EAJA when the
government prevailed on the merits at the trial court level, but
then lost on appeal.  See, e.g., Oregon Natural Resources
Council, 980 F.2d at 1332; Thomas v. Peterson, 841 F.2d 332, 336
(9th Cir. 1988); United States v. One 1984 Ford Van, 873 F.2d
1281, 1282 (9th Cir. 1989).

My opinion granting summary judgment for Defendants did not
address the merits of Plaintiffs' arguments relating to the
pacific fisher, having concluded (erroneously, the Circuit has
decided) that evidence regarding the fisher post-dated the
challenged decision.  My opinion rejected the government's
litigation position on some other issues.  See, e.g., 2007 WL
489272 at **10-12 (rejecting government's contention that LHZ 2
lands are not part of Riparian Reserve) and at **12-14 (rejecting
government's contention that proposed expansion area is not
subject to Management Strategies 22 and 26).  I also commented on
the difficulty of finding important information within the 1270-
page Final Environmental Impact Statement ("FEIS"), id. at **2,
14-15, which made reviewing the agency's decision a formidable
undertaking.

The government prevailed on some arguments, but lost the
case.  That some of Plaintiffs' arguments were unsuccessful is a
valid consideration in determining the amount of the fee award,
but does not warrant denying them fees entirely.  The government
has not met its burden of showing that the agency's position was
substantially justified.

   **2.   Belated Challenge to Standing**

   The government contends the record did not adequately
demonstrate that plaintiff Oregon Natural Resources Council Fund
("ONRCF")[2] had standing to maintain this action.   ONRCF
disagrees, but I need not reach that question.   The government
did not contest ONRCF's standing earlier.   It is too late to do
so now.   The judgment on the merits is final.   The time for
further appeal expired long ago.   The government's argument,
though made in opposition to a fee petition, amounts to a
prohibited collateral attack upon the underlying judgment.   See
Fischel v. Equitable Life Assurance Society of the U.S., 307 F.3d
997, 1005-06 (9th Cir. 2002).

    For litigation to have any semblance of finality, courts
cannot permit final judgments to be attacked collaterally on the
basis of alleged defects in standing, or diversity of
citizenship, or that the amount in dispute was below the
jurisdictional minimum in a diversity action.   See Insurance
Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456
U.S. 694, 702 n.9 (1982); Des Moines Navig. & R. Co. v. Iowa
Homestead Co., 123 U.S. 552, 558-59 (1887); Noble v. Union River
Logging R. Co., 147 U.S. 165, 173-74 (1893).   "[T]otal want of
jurisdiction must be distinguished from an error in the exercise
of jurisdiction."   Lubben v. Selective Service System Local Bd.
No. 27, 453 F.2d 645, 649 (1st Cir. 1972) (footnote omitted).
"Only in the rare instance of a clear usurpation of power will a
judgment be rendered void [for want of subject matter

―――――――――――

    [2]  ONRCF is now known as Oregon Wild.

5 - OPINION AND ORDER ON ATTORNEY FEES AND EXPENSES

jurisdiction]." Id. See also Jones v. Giles, 741 F.2d 245, 248 (9th Cir. 1984); RESTATEMENT (SECOND) OF JUDGMENTS § 11, comment e, and § 12; Vecchione v. Wohlgemuth, 426 F. Supp. 1297, 1307-1309 (E.D. Pa.), *affirmed*, 558 F.2d 150 (3d Cir. 1977).  The government has not shown a "clear usurpation of power" occurred.

    Furthermore, the government acknowledges the other plaintiffs had standing, including fee applicant National Center for Conservation Science and Policy ("NCCSP"), formerly known as Headwaters.  "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." Rumsfeld v. Forum for Academic and Institutional Rights, Inc., 547 U.S. 47, 53 n.2 (2006).

### 3.    Failure to Exhaust Remedies

    It seems rather late to argue exhaustion of remedies for the first time after the case is already over.  In any event, the government now concedes ONRCF did file an administrative appeal.

### B.    Amount of the Fee Award

    Having satisfied all applicable requirements of EAJA, the fee applicants are entitled to an award of some attorney fees. The parties dispute how much.

### 1.    Adjustment for Presence of Ineligible Party

    Only two plaintiffs, ONRCF and NCCSP, join in the application for attorney fees.  The third plaintiff, the Sierra Club, is ineligible for a fee award under the criteria in § 2412(d)(2)(B).  The government argues, in passing, that the hours billed by Plaintiffs' attorney therefore should be reduced

by one-third, but cites no authority mandating such adjustment.[3]

Alternatively, the government contends that approximately six hours, over the course of four years of litigation activity, was expended "for services performed exclusively for the Sierra Club" and must therefore be deducted. It is not easy to determine which hours the government has in mind, but they appear to be instances in which counsel conferred with persons associated with the Sierra Club in some manner regarding the litigation. The difficulty with that argument is there are times when counsel needs to confer with all parties, including Mr. Navickas, who was pro se, and with opposing counsel. That doesn't mean such services were "performed exclusively for" Navickas or for opposing counsel. In addition, the local chapter of the Sierra Club had studied the Mt. Ashland expansion issue for years, and could provide counsel with factual information to support the contentions being made in this litigation.

Plaintiffs' counsel did prepare a declaration for Aaron Isherwood of the Sierra Club, in support of Plaintiffs' request to waive the bond requirement while the matter was stayed pending appeal. For any plaintiff to obtain a stay, it was necessary for

---

[3] The government's argument might be better taken if the true plaintiff was ineligible for fees, and a sham plaintiff was added to circumvent that restriction. The government does not contend that occurred here. Both fee applicants participated actively at the agency level and during the litigation, and two board members furnished expert affidavits on the merits. For better or worse, both fee applicants have a long history of environmental litigation in Southern Oregon. They contend, and there is every reason to believe, they would have brought this action even if the Sierra Club was not a party. By contrast, a Sierra Club representative filed a sworn declaration stating his organization would not have brought this action independently.

counsel to set forth the financial status of each plaintiff. Accordingly, the Isherwood declaration was not solely for the benefit of the Sierra Club.

**2.    Adjustment for Partial Success**

Plaintiffs asserted a number of theories.  Not all were successful, though most were related to the same factual nexus and sought similar relief.  Some arguments mentioned in the government's brief were actually asserted by Mr. Navickas, not the fee applicants.  Counsel also has exercised billing judgment and did not seek reimbursement for certain hours expended on unsuccessful issues.  In addition, regardless of whether Plaintiffs asserted one claim or twenty, a significant amount of work was required simply to review the nearly thirty thousand page administrative record, to identify the issues, and otherwise to litigate this action.  For that reason, a strictly proportional adjustment based on the percentage of claims that succeeded is not appropriate here.

Instead, I apply a ten percent reduction for most work performed by attorneys Dugan and Winter through summary judgment, and a five percent reduction for briefing at the appellate level (where Plaintiffs did not pursue most of the weaker claims).  No deduction is warranted for work on the notice of appeal, stay pending appeal, oral arguments (counsel had to attend anyway), or post-appeal hours.

The work billed by law clerk Sarah Peters includes research on computer modeling and Laguna Greenbelt v. United States Dep't of Transp., 42 F.3d 517 (9th Cir. (9th Cir. 1994).  As Plaintiffs

8 - OPINION AND ORDER ON ATTORNEY FEES AND EXPENSES

did not succeed on those arguments, I deduct six hours. The 9.84 hours billed by law clerk Sam Gaugush were for work on the successful appeal and fisher. No deduction is warranted. Law clerk Jonathan Evans billed 89 hours for work in reviewing the administrative record and on the summary judgment motions. I deduct fifteen percent (13.35 hours). Law clerk Jay Lininger worked on many issues, but Plaintiffs succeeded on only some. I deduct 24.45 hours from the time Lininger billed in 2004, and 19.5 hours from the time he billed in 2005.

## 2. Compensation for Identifying Claims & Drafting Complaint

The government objects to compensating counsel for any time prior to the day this action formally was commenced, such as time that counsel spent reviewing the administrative record, researching the applicable law, identifying which claims were appropriate to assert, and drafting the Complaint. The government cites no authority that supports denying compensation for such tasks, which rank among the most important an attorney performs in any litigation. Cf. Lucas v. White, 63 F. Supp. 2d 1046, 1058-59 (N.D. Calif. 1999) ("time reasonably spent on pre-complaint investigation, legal research and informal discovery relevant to developing the theory of the case is properly recoverable" under EAJA).

Nor is there reason to deny recovery for the small amount of time counsel spent conferring with Mr. Navickas, who filed a separate but related action which eventually was consolidated with this case. Counsel had to keep informed of what Navickas

was up to.  His pro se activities could alter the procedural landscape for all parties.

### 3.    Compensation for Work on Administrative Appeal

The government objects to compensating counsel for any work performed in connection with the administrative appeal that was a prerequisite for Plaintiffs to seek judicial relief.  Both sides profess the right to such fees (or lack thereof) is settled law, yet no party cites a decision squarely on point.  In each case cited, either the defendant was not the United States, the fee statute was not EAJA, the administrative proceedings followed rather than preceded the judicial proceedings, or the administrative proceeding was a stand-alone proceeding with no connected court action in which fees were recoverable.[4]

---

[4]    Cf. Webb v. Board of Ed. of Dyer County, 471 U.S. 234, 243 (1985) (time spent on "optional administrative proceedings" may be compensable under 42 U.S.C. § 1988 if work was "both useful and of a type ordinarily necessary to advance the ... litigation" to the point where the party succeeded); Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546 (1986) (allowing compensation for post-litigation administrative proceedings under Clean Air Act); Sullivan v. Hudson, 490 U.S. 877, 888  (1989) (fees allowed under EAJA for post-remand administrative proceedings, reasoning that "where administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded") and at 892 ("[t]hat Congress carved the world of EAJA proceedings into 'adversary adjudications' and 'civil actions' does not necessarily speak to, let alone preclude, a reading of the term 'civil action' which includes administrative proceedings necessary to the completion of a civil action"), overruled in part on other grounds by Shalala v. Schaefer, 509 U.S. 292 (1993); New York Gas Light Club, Inc. v. Carey, 447 U.S. 54, 65 (1980) (fee-shifting provision of Title VII authorizes award of attorney's fees for services performed in state administrative proceedings, Congress having mandated initial resort to state and local remedies); Ardestani v. INS, 502 U.S. 129 (1991) (no fees allowed for deportation proceeding that were unrelated to any judicial proceeding and not governed by § 504 of

Given the prevalence of environmental litigation, coupled with mandatory administrative appeals, it seems odd that neither side can cite a case on point.  Perhaps the parties did not feel the matter worth spending much time on, with just a handful of hours at issue.  After reviewing the timesheets, it appears that Plaintiffs' counsel did not bill for work on the administrative appeal, but for time spent <u>reading</u> the appeals that were filed, ascertaining the procedural posture and deadlines, studying the administrative record, lining up experts, and otherwise preparing to file the Complaint.  Indeed, the first billing entry for attorney Winter is three weeks after the administrative appeal was filed.  A law clerk did work on the administrative appeal, but I have already deducted part of that time because Plaintiffs did not prevail on some issues.  The balance of his research and writing was utilized in the litigation.  Accordingly, the government's objection is overruled, and it is not necessary to reach the legal question the parties posed.

### 4.   Other Adjustments to Hours Billed

The government, with little explanation, submitted a long list of time entries it deems objectionable.  I cannot determine

---

the APA); <u>Native Village of Quinhagak v. United States</u>, 307 F.3d 1075, 1081-83 (9th Cir. 2002) (construing provision in ANILCA allowing attorney fees in "action" against the United States to include fees "incurred during the required exhaustion of administrative appeals").  My own research reveals an Eighth Circuit decision denying fees for pre-litigation Forest Service administrative appeals, <u>Friends of the Boundary Waters Wilderness v. Thomas</u>, 53 F.3d 881, 888 (8th Cir. 1995), and a decision from this District in which Judge King, relying upon <u>Native Village of Quinhagak</u>, allowed attorney fees against the United States for exhausting remedies at the administrative level in a Freedom of Information Act dispute.  <u>Oregon Natural Desert Ass'n v. Guttierez</u>, Civil No. 05-210-KI (D. Or. Aug. 7, 2006).

what the grounds are for most of these objections.  The
government seems to have simply listed every time entry
containing terms such as "Email."  Nowadays, attorneys routinely
conduct litigation via e-mails between opposing counsel and to
others.  That doesn't make it "clerical" work.  Lead counsel
billed in hundredths of an hour, rather than tenths, so many
entries are for small sums.  I am denying compensation for
certain entries Ms. Dugan acknowledges were clerical and for some
additional entries I construe as purely secretarial.  Secretarial
time for these tasks is already incorporated in the hourly rate.

The government does not contend the time spent on this case
as a whole was excessive, let alone identify specific time
entries that allegedly were excessive.  The time billed appears
reasonable.  Necessary travel time was discounted fifty percent.
Counsel has satisfactorily explained the relevance of certain
entries the government had questioned.

| Attorney | Year | Hours Billed | Hours Allowed |
|---|---|---|---|
| M. Dugan | 2004 | 14.36 | 11.25 |
| M. Dugan | 2005 | 47.23 | 39.05 |
| M. Dugan | 2006 | 62.41 | 55.88 |
| M. Dugan | 2007 | 73.14 | 70.62 |
| M. Dugan | 2008 | 34.18 | 34.18 |
| **Subtotal** | | 231.32 | 210.98 |

/ / / /

/ / / /

/ / / /

| Attorney | Year | Hours Billed | Hours Allowed |
|----------|------|--------------|---------------|
| C. Winter | 2004 | 5.50 | 4.95 |
| C. Winter | 2005 | 66.23 | 57.63 |
| C. Winter | 2006 | 47.11 | 40.22 |
| C. Winter | 2007 | 48.10 | 46.02 |
| **Subtotal** | | 166.94 | 148.82 |

### 5.    Hourly Rates for Paralegal Services and Law Clerks

This was a fact-intensive case.  The administrative record spanned nearly thirty thousand pages, with a 1270-page FEIS. Navigating these paper forests, and summarizing the important portions in a few pages for a reviewing court, was a difficult task.  The fee petition includes hours incurred in the district court, on appeal, the motions for a stay pending appeal, and the fee petition litigation.

To reduce the total hours of attorney time spent on a case, Plaintiffs' counsel employs law clerks.  The government contends paralegal and law clerk services are compensable under EAJA only at the rate a law firm actually pays in wages to the individual, rather than the rate those the services are billed to clients. The Supreme Court disagrees.  Richlin Security Service Co. v. Chertoff, ___ U.S. ___, 128 S. Ct. 2007 (2008) (EAJA authorizes compensation for paralegal services at "prevailing market rates," not the out-of-pocket cost to the law firm).

Most of the law clerk hours were billed for work performed during 2005 and 2006.  Plaintiffs seek compensation for these law clerks at the rate of $80 per hour.  That is a reasonable hourly rate considering the qualifications of the law clerks and

services performed, except I allow only $75 per hour for work
performed during 2004.

### 6.   Hourly Rates for Attorneys

EAJA caps attorney fees at "$125 per hour unless the court
determines that an increase in the cost of living or a special
factor, such as the limited availability of qualified attorneys
for the proceedings involved, justifies a higher fee."  28 U.S.C.
§ 2412(d)(2)(A).

Since the 1980s, the Ninth Circuit has used the consumer
price index for urban consumers ("CPI-U") to offset inflation.
See Ramon-Sepulveda v. INS, 863 F.2d 1458, 1463-64 (9th Cir.
1988).  In recent years, the increase in CPI-U has lagged far
behind the increase in the cost of legal services.  When the
market rate for legal services in many regions is so much higher
than the official EAJA rate, it becomes increasingly difficult to
find competent attorneys willing to accept such cases on a
contingency basis.

"[T]he limited availability of qualified attorneys for the
proceedings involved" is a special factor that will "justif[y] a
higher fee."  § 2412(d)(2)(A).  To obtain a departure from the
statutory cap under this standard, a fee applicant must
demonstrate that (1) the attorney has a distinctive knowledge or
specialized skill, (2) such knowledge and skill were necessary to
the litigation, and (3) similar knowledge and skill could not
have been obtained at the statutory rate.  Pirus v. Bowen, 869
F.2d 536, 541-42 (9th Cir.1989).

The government does not dispute, and I find, that all three Pirus criteria are met here. The parties do dispute what hourly rates to apply instead. The government points to the 2007 Oregon State Bar Survey of hourly rates in Southern Oregon, but few if any attorneys in this region accept Plaintiffs' environmental cases, especially on a contingency basis. All parties (including the government and intervenor) utilized attorneys from Eugene or Portland (or, in the government's case, from the District of Columbia as well). According to the 2007 Oregon State Bar Survey, the average hourly rate in Portland for the broad category of "Real Estate/Land Use/Environmental Law" is $268 per hour, with a median of $260 per hour. In applying the Oregon Bar Survey, the government also unduly emphasizes an attorney's longevity (or lack thereof). Older does not automatically equate to wiser. Conversely, some younger attorneys have the talent, training, and specialized knowledge to command a higher rate.

The fee applicants cite a fee matrix based on attorney fees in the District of Columbia, but it wasn't necessary to travel that far to find competent counsel. Nor am I impressed by a study on billing rates at "the nation's 250 largest law firms . . . . " An hourly rate exceeding the $125 cap does not translate into an express ride to the top of the market.

Plaintiffs cite several examples of hourly rates awarded in other environmental cases in this District, which are helpful. Plaintiffs also offer declarations from three veteran Oregon attorneys. After considering the relevant factors, I allow the

following hourly rates in this action:[5]

| Attorney | Year Work Performed | Requested Hourly Rate | Government's Suggested Hourly Rate | Rate Awarded |
|---|---|---|---|---|
| M. Dugan | 2004 | $ 250 | $ 211 | $ 215 |
| M. Dugan | 2005 | $ 260 | $ 218 | $ 225 |
| M. Dugan | 2006 | $ 270 | $ 225 | $ 235 |
| M. Dugan | 2007 | $ 280 | $ 231 | $ 245 |
| M. Dugan | 2008 | $ 280 | $ 240 | $ 250 |
| C. Winter | 2004 | $ 210 | $ 177 | $ 210 |
| C. Winter | 2005 | $ 225 | $ 183 | $ 225 |
| C. Winter | 2006 | $ 240 | $ 189 | $ 240 |
| C. Winter | 2007 | $ 250 | $ 194 | $ 250 |

### 7.    Fees for Fee Litigation

Plaintiffs are entitled to reasonable attorney fees for the fee application.  INS v. Jean, 496 U.S. 154, 163-65 (1990).

### 8.    Expenses and Costs

In addition to attorney fees, EAJA authorizes an award of "other expenses" incurred by a party prevailing against the United States, § 2412(d)(1)(A), including "the reasonable expenses of expert witnesses, [and] the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case. . . ."  §2412(d)(2)(A).

---

[5]  The government assumes that because I allowed a particular rate to an attorney in one case, that rate thereafter applies to all other cases involving that attorney.  That is not necessarily so.  Many factors can differ, such as the attorney's role in a given case, the showing made in support of the requested rate, the complexity of the case and quality of the work performed, and the difficulty or comparative ease of attracting qualified counsel.

###### a.    **Experts for Litigation on Merits**

The fee applicants request $8,615.00 for 107.50 hours of work, at $80 per hour, performed by Ken Crocker in connection with the two expert declarations he prepared for use in this litigation.  The fee applicants also request $3,579.30 for 47.50 hours of work, at $75.00 per hour, performed by George Badura in connection with the expert declaration he prepared for use in this litigation.  That Crocker and Badura performed the work, and the hourly rates for their efforts, are not in dispute.  I also recognize that Badura's knowledge of the ski area and erosion issues may have been helpful to counsel in litigating this case.

Nevertheless, I deny these expense requests.  First, I ordered all extra-record affidavits stricken.  Second, Plaintiffs lost on the issues addressed by the Crocker and Badura affidavits.  I also note that Crocker is President of the Board of Directors of fee applicant Headwaters/NCCSP, and Badura is a director of the organization.  Because the two stated reasons are sufficient, I do not decide whether their role as officers or directors is an additional reason for denying compensation.

###### b.    **Experts for Fee Petition**

In support of their fee petition, Plaintiffs submit declarations from attorneys Stephanie Parent, Karl Anuta, and Gary Kahn.  Each offers an expert opinion on the reasonableness of the hours billed and the rates requested, as well as the skills and reputation of one or both counsel for Plaintiffs. Anuta and Parent also express an opinion on the reasonableness of the amounts claimed for experts and other expenses.

17 - OPINION AND ORDER ON ATTORNEY FEES AND EXPENSES

The parties agree it was appropriate for the fee applicants to procure such expert opinions, and to compensate Parent, Anuta, and Kahn for their time reviewing the file and providing an expert opinion.  The parties disagree on how much time was reasonable, and at what rate.  Given that the underlying fee application here seeks over one hundred forty thousand dollars, and the government was contesting many aspects including the hourly rates, obtaining three opinions was not excessive.  After considering the scope and detail of each opinion, which varied, I allow 1.0 hours for Kahn, 2.9 hours for Parent, and 2.9 hours for Anuta, all at $300/hour.

### c.    Miscellaneous Costs

The government does not contest the request for $1,943.90 for miscellaneous costs such as filing fees, printing, and postage, less the $630.77 previously awarded in the district court cost bill and $ $602.10 awarded in the appellate cost bill. The net is $ 711.03.

### 9.    Summary -- Award of Fees and Expenses

| Attorney | Year | Amount Requested | Amount Awarded |
|----------|------|------------------|----------------|
| Dugan | 2004 | $  3,590.00 | $  2,418.75 |
| Dugan | 2005 | $ 12,279.80 | $  8,786.25 |
| Dugan | 2006 | $ 16,850.70 | $ 13,131.80 |
| Dugan | 2007 | $ 20,479.20 | $ 17,301.90 |
| Dugan | 2008 | $  9,570.40 | $  8,545.00 |
| **Subtotal** |  | $ 62,770.10 | $ 50,183.70 |

| Attorney | Year | Amount Requested | Amount Awarded |
|---|---|---|---|
| Winter | 2004 | $ 1,155.00 | $  1,039.50 |
| Winter | 2005 | $14,901.75 | $ 12,996.75 |
| Winter | 2006 | $11,306.00 | $  9,652.80 |
| Winter | 2007 | $12,025.00 | $ 11,505.00 |
| **Subtotal** | | $39,387.75 | $ 35,164.05 |

| Law Clerk | Hourly Rate Allowed | Hours Billed | Hours Allowed | Amount Requested | Amount Awarded |
|---|---|---|---|---|---|
| Lininger | $ 75 | 85.00 | 60.55 | $  6,800.00 | $  4,541.25 |
| Lininger | $ 80 | 113.05 | 93.55 | $  9,044.00 | $  7,484.00 |
| Evans | $ 80 | 89.00 | 75.65 | $  7,120.00 | $  6,052.00 |
| Peters | $ 80 | 32.50 | 26.50 | $  2,600.00 | $  2,120.00 |
| Gaugush | $ 80 | 9.84 | 9.84 | $    787.20 | $    787.20 |
| **Subtotal** | | | | $ 26,351.20 | $ 20,984.45 |

| Expert | Amount Billed | Amount Awarded |
|---|---|---|
| Crocker | $  8,615.00 | $     0.00 |
| Badura | $  3,579.30 | $     0.00 |
| Kahn | $    300.00 | $   300.00 |
| Parent | $    942.50 | $   870.00 |
| Anuta | $  1,425.00 | $   870.00 |
| **Subtotal** | $ 14,861.80 | $ 2,040.00 |

| | |
|---|---|
| **Total Requested** | $ 145,314.75 |
| **Amount Denied** | $  36,943.55 |
| **Total Awarded** | $ 108,372.20 |

19 - OPINION AND ORDER ON ATTORNEY FEES AND EXPENSES

## **Conclusion**

The fee applicants' motion (# 199) for an award of attorney fees and expenses under EAJA is granted in part. Plaintiffs are awarded $108,372.20 in fees and expenses.

IT IS SO ORDERED.

DATED this 25th day of August, 2008.


/s/ Owen M. Panner

_____
Owen M. Panner
United States District Judge